FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

01 MAR 22 PM 3: 1?

DISTRICT COURT
N.D. OF ALABAMA

NICKIE MAYO,                    )
                               )
        Plaintiff,             )
                               )        CIVIL ACTION NO.
                               )
v.                             )
                               )        00-AR-2222-M
PURITY DAIRIES, INC., *et al.*,)
                               )
        Defendants.            )

ENTERED

MAR 22 2001

### MEMORANDUM OPINION

Before the court are the cross-motions for summary judgment by

Canada Life Assurance Company ("Canada Life"), one of the

defendants, and by plaintiff, Nickie Mayo ("Mayo"). Mayo brought

suit against three entities: (1) his former employer, defendant

Purity Dairies, Inc. ("Purity"), (2) the employee benefit plan of

which he is a beneficiary, defendant Long Term Disability Income

Plan for Purity Diaries, Inc. ("the Plan"), and (3) Canada Life, the

issuer of the disability insurance policy in dispute ("the Policy")

and the administrator or agent for Purity and the Plan. Mayo

challenges Canada Life's forcible recoupment of benefits from him

in an amount equal to the lump sum payment that Mayo received from

Social Security.

In his amended complaint, Mayo alleges that defendants

unlawfully denied benefits due him under the Plan. He invokes the



Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§§ 1001 *et seq.* He also claims that defendants are liable under

Alabama statutory and common law theories for damages allegedly

caused by defendants' bad faith refusal to pay the disputed

benefits. On September 25, 2000, the court dismissed plaintiff's

action against all defendants insofar as plaintiff seeks relief

other than payments of benefits pursuant to ERISA. Subsequently,

plaintiff moved to reinstate his non-ERISA claims on the strength

of this court's decision in *Hill v. Blue Cross & Blue Shield of

Alabama*, 117 F.Supp.2d 1209 (N.D.Ala. 2000) (Acker,J.). In its

order of November 21, 2000, the court delayed ruling on plaintiff's

motion to reinstate his non-ERISA claims until the Eleventh Circuit

takes action on the pending appeal in *Hill*. Therefore, the sole

issue presented by the cross-motions for summary judgment is whether

the Policy, by its express terms, allows Canada Life to obtain

reimbursement for what it deems was an overpayment of benefits

occasioned by a retroactive award of Social Security disability

benefits to Mayo. The court, for the reasons set forth below, will

deny Canada Life's motion and will grant Mayo's motion as against

Canada Life. However, as explained below, it will also deny, in

advance of Eleventh Circuit action on *Hill*, Mayo's motion to

2

reinstate.

### Pertinent and Undisputed Facts

The Plan qualifies as an ERISA plan.  It provides for the payment of benefits to eligible persons for long-term disabilities pursuant to the Policy, a group disability policy issued by Canada Life.  Canada Life provides insurance coverage under the Policy in exchange for experience-rated premiums.  Purity and the Plan are proper parties defendant, but the target defendant is obviously Canada Life.  It is probably for this reason that neither Purity nor the Plan has filed its own motion for summary judgment.  They are simply along for the ride.

In addition to delivering copies of the Policy itself to its beneficiaries, Canada Life provides them with a summary plan description ("the SPD") of the Policy.  The SPD is only meant to explain the Policy; it is not a contract of insurance itself.  It includes a provision not found in the Policy.  This SPD provision provides the details for claim processing and is entitled "Denial and Redress of Claims".  In part, it explains that Canada Life will make a decision on a claim typically within 90 days and that if the claim is denied, a review of this determination can be requested by the claimant-beneficiary.  This claims provision concludes: "Canada

3

Life will make the final decision on the claim."

While employed by Purity, Mayo became disabled.  Pursuant to the Policy and effective in September of 1996, Canada Life approved a monthly payment to Mayo of $1,680.00.  In the approval letter dated December 19, 1996, Canada Life reminded Mayo that the Policy called for reducing this amount if he receives, or is entitled to receive, disability benefits from other sources, such as Social Security.  Canada Life did not supply to Mayo a reason for its said assertion, but now explains that its right of reduction arises from the "Reductions" section of the SPD, and, by extension, the corresponding and virtually identical Policy provision.  The "Benefits Due to Disability From Other Sources" provision within the Reductions section of the Policy establishes that "payments will automatically be reduced by the amount of any income that a person earns or is entitled to apply for and receive" under Social Security.  The latter scenario is specifically addressed later in that section, in the "Conditions" provision:

> If, at the time of calculating the amount of any such payments to be made under this policy, the benefit which a person is entitled to apply for and receive under any other source described in this provision [e.g., a Social Security disability benefit] has not been awarded nor denied, we will estimate the amount of such benefit. The estimate will be used to reduce the amount of the payments under this policy until such time as the benefit

4

under such source has been awarded or denied.  However, such estimate will not be used if, within six months of becoming disabled, the person meets both the following conditions.

    1.  The person has applied for the benefit under the other source; and

    2.  The person completes and signs our Reimbursement Agreement. This agreement states that the person promises to repay to us any overpayment caused by an award of the benefit under the other source.

    If we have reduced payments under this policy by an estimate of the amount of the benefit under another source, we will adjust the amount of the payments under this policy when we receive written notice that the amount of the benefit received under such source differs from the estimate or that the benefit has been denied.

The last paragraph of the section goes on to explain that the amount of any over-estimations by Canada Life will be refunded to the beneficiary, but that the amount of its under-estimations must be repaid by the beneficiary.

A separate section of the Policy, namely, "Right of Recovery", establishes Canada Life's reimbursement rights when the beneficiary's extra-Policy receipt for disability compensation is pursuant to a judgment or settlement based on a third-party's liability.  When a person recovers based on another's liability:

    A person will reimburse us in the amount of any benefits we have paid out of the damages recovered, which damages, when added to the benefits paid under this policy, are in excess of 100% of his lost income.

If a person receives a lump sum payment or periodic payments under judgment or settlement for damages[,] we will stop making payments under this policy.

Payments will only resume when the payments which would otherwise be payable under this policy equal the amount we are entitled to be reimbursed.

On June 26, 1997, a little over six months after the December 19, 1996 letter, Canada Life sent Mayo another letter in which it stated its belief that he was entitled to Social Security disability benefits.  It provided contact information suggesting a lawyer who would aid Mayo in making a Social Security claim.  It further reminded him that if he received a retroactively applied lump sum from the Social Security Administration, Canada Life would consider him overpaid to the extent that the time period retroactively covered by the lump sum should overlap with the months he had been receiving payments from Canada Life, and that he would be required to reimburse Canada Life for such possible overpayment.  Canada Life enclosed with its letter a so-called Reimbursement Agreement for Mayo to complete and sign.  The proffered agreement contained an acknowledgment by Mayo that a prospective award of Social Security benefits would trigger a reimbursement obligation.  Mayo never signed or returned the agreement.  Neither did he use the services of the lawyer offered by Canada Life.

Mayo did, however, pursue his Social Security claim, using his

6

own lawyer.  Initially, his claim was denied, but after pursuit of appeals, in September 1998, he received an award of $1,081.00 per month, retroactive to December 1, 1996.  The record does not reflect how much of this recovery went to compensate his lawyer.  After being notified by Mayo of this development, Canada Life, in November 1998, informed Mayo that his future monthly payments under the Policy would be reduced to the difference between the total monthly benefit Mayo is entitled to under the Policy, namely, $1,680.00, and the newly acquired monthly Social security payment, $1,081.00.  The result of this reduction was that Mayo's total disability income remained the same, but the Policy's portion of that sum decreased from 100% to approximately one-third.  Canada Life also informed Mayo that it had overpaid him by the sum of $19,150.02 because the $1,081.00 monthly Social Security award applied retroactively to December 1, 1996.  Canada Life demanded payment in full of its alleged overpayment.  After Canada Life on December 8, 1998 made its second demand, Mayo's wife replied by a letter in which she expressed confusion regarding the origination of the dispute and stated: "I talked to you one day and asked could you please accept monthly payments and just apply Nick's check to this balance until it is paid in full and you said maybe.  Please do this for us as that is the only way we can pay."  Subsequently, Canada Life agreed

7

to recoup the alleged overpaid amount by suspending Mayo's newly-reduced monthly payment under the Policy until $19,150.02 is restored to its coffers.  It is this scheme that Mayo contests in this action.  Mayo does not contest a prospective reduction based on his future Social Security benefits.  He only protests Canada Life's claim of a right to reimburse itself for what it paid him before he obtained his Social Security award.

### Summary Judgment Standard

Rule 56(c), F.R.Civ.P. provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The Supreme Court has emphasized that this language means exactly what it says: there must be a genuine issue of material fact, not merely some factual dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510.  While the existence of disputed material facts could make it possible to deny both motions for summary judgment, it would be impossible to grant one without denying the other.

### Discussion

I.   Determination of the standard of review of Canada Life's
decision

Mayo's ERISA claim against Canada Life arises under 29 U.S.C.
§ 1132(a)(1)(B).  This statute allows a plan beneficiary to bring
a civil action to recover benefits due him under an ERISA plan and
to enforce his plan rights.  A decision to deny a beneficiary plan
benefits is reviewed under the arbitrary and capricious standard if
the relevant plan documents grant the fiduciary decision-maker
"discretionary authority to determine eligibility for benefits or
to construe the terms of the plan."  *Firestone Tire & Rubber Co. v.
Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57 (1989).  Relying on
*Firestone* and its progeny, the Eleventh Circuit has held that if the
grant of discretion is not express and unambiguous, judicial review
is *de novo*.  *See Kirwan v. Marriott Corp.*, 10 F.3d 784, 788-89 (11th
Cir. 1994); *Moon v. American Home Assurance Co.*, 888 F.2d 86, 88-89
(11th Cir. 1989).  Words in an ERISA document are ambiguous if
"reasonable persons could disagree as to their meaning and effect."
*Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir. 1990).

The court will not review Canada Life's challenged decision
under the arbitrary and capricious standard because the "grant of

discretion", to the extent that there is one here, does not expressly and unambiguously apply to Canada Life's decision in this case.   There can be no dispute over the fact that Canada Life initially made the decision that Mayo had a valid claim to Plan benefits under the terms of the Policy.   Furthermore, since its December 16, 1996 letter Canada Life has not questioned Mayo's eligibility for benefits.   It plans to reduce Mayo's monthly payments only long enough to recoup what it says it overpaid.  After it has recovered its alleged overpayment, it admittedly intends to resume monthly payments to Mayo, although at a reduced level.  Mayo does not seek to overturn a denial of his claim to Policy benefits, because no such denial decision was ever made by Canada Life. Instead, Mayo contends that he has been "denied benefits", in the § 1132(a)(1)(B) sense of the phrase, only by Canada Life's decision to reduce his benefits to the tune of $19,150.02.  This decision to reduce is the action Mayo complains of.

The recoupment decision at issue does not expressly or unambiguously fall under Canada Life's "grant of discretion". Canada Life would find a grant of discretion in the last sentence in the "Denial and Redress of Claims" provision of the SPD: "Canada

Life will make the final decision on the claim."[1]  The preceding

paragraphs in the SPD provide that Canada Life typically will decide

to grant or deny the claim within 90 days of submission; if the

decision is to deny, then the claimant can ask for a review; the

review decision is to be made within 60 days of claimant's review

request; and, even after review the decision is still to deny, the

decision, as the final sentence explains, is final.  Reasonably

read, this information relates to a claimant-beneficiary who is

awaiting a "thumbs-up" or "thumbs-down" from Canada Life on a claim

for disability benefits.  It is reasonable, at the least, then, to

read the preceding paragraphs in the provision as indicating that

the "decision" referred to in the tell-tale sentence is whether a

submitted claim is covered by the Policy, as distinguished from a

subsequent *ex parte* decision to **reduce** benefit payments on an

otherwise valid claim.  The presence of a separate, detailed Policy

provision, the Reductions section, that addresses the issues of by

how much and on what grounds Canada Life can reduce benefits only

bolsters the reasonableness of interpreting the "grant" as not

---

[1]The fact that the language Canada Life relies on is contained only in
the SPD, not in the actual contract between Mayo and Canada Life, the Policy,
raises an additional issue the court does not address.  *See Branch v. G. Bernd
Co.*, 955 F.2d 1574, 1578-1579 (11th Cir. 1992) (citing *McKnight v. Southern
Life & Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir. 1985)) (holding that
where the summary and the underlying contract conflict, the terms of the
summary control if the beneficiary has reasonably relied on the summary and
unfairness would result from allowing the terms of the contract to trump
inconsistent terms in the summary).

giving Canada Life broad discretion to make a binding interpretive decision on the dispute presently before the court.  Proof that the alleged "grant of discretion" applies to a denial of benefits and not to a subsequent reduction in benefits already awarded is the conspicuous fact that Canada Life does not complain about Mayo's failure to exhaust the internal administrative remedies for challenging a denial.  Even assuming that the lone sentence is reasonably susceptible to a reading that would extend the scope of Canada Life's discretion to a decision to reduce benefits to an eligible beneficiary, this supposition only makes the discretionary grant ambiguous.  Additionally, neither the sentence nor the provision in which it appears mentions reductions; the grant of discretion, then, is not express or unambiguous.  Therefore, Canada Life is not entitled to an arbitrary and capricious standard of review of its decision to reduce payments to Mayo by $19,150.02, and this court will review the challenged decision *de novo*.

Because the contract fails unequivocally to grant Canada Life the discretion to have made **this particular decision**, the court need not rely on the fact that no deference should be accorded Canada Life's decision because of its own obvious economic interest in recovering money it has paid out.  Its pocket book is involved.  It

12

did not make this decision as the administrator of a self-insured plan.   Its conflict-of-interest wipes out any discretion it would have, even if the grant of discretion were express and unambiguous. *See Brown v. Blue Cross & Blue Shield of Alabama*, 898 F.2d 1556, 1562-1568 (11th Cir. 1990).

II.  Application of the *de novo* standard of review

In practice, *de novo* review entails giving natural meaning to the straightforward language of the pertinent terms of a contract. *See Moon*, 888 F.2d at 89 (citing *Burnham v. Guardian Life Ins. Co. of America*, 873 F.2d 486, 489 (1st Cir. 1989)).   A court applying the *de novo* standard literally construes an insurance policy "'"without deferring to either party's interpretation."'" *Moon*, 888 F.2d at 89 (quoting *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 550 (6th Cir. 1989), in turn quoting *Firestone*, 489 U.S. at 112, 109 S.Ct. at 955).

This particular Policy and the SPD both having been drafted by Canada Life, they are to be construed against it where there is any ambiguity.   *See Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547, 1550-1552 (11th Cir. 1994).   Even under a literal construction, the relevant Policy language does not allow Canada

13

Life to obtain reimbursement for overpayments of benefits as a result of a retroactive award of Social Security disability benefits to Mayo.  In its letter of June 26, 1997, Canada Life encouraged Mayo to apply for Social Security benefits.  The Reductions section of the Policy provides that if the extra-Policy benefit that the beneficiary is entitled to apply for is a Social Security benefit, an "estimate will be used to reduce the amount of the payments under this policy until such time as the benefit under such source has been awarded or denied."[2]  These words gave Canada Life the right to estimate the amount of the Social Security benefit it thought Mayo would receive and accordingly to reduce his monthly benefit in advance of any action by Mayo or by the Social Security Administration.

In addition to the **prospective** reduction just described, in two different circumstances the Reductions section allows Canada Life, for the purpose of reimbursing itself, to **retrospectively** reduce monthly payments based on the amount of a Social Security award that

---

[2]Any ambiguity in this language regarding the ends to which Mayo needed to go in pursuing his claim with the Social Security Administration is irrelevant here.  As explained below, whether or not the initial denial of Mayo's claim constituted a "benefit denial", as the phrase is implicated by the sentence quoted in the text accompanying this footnote, Canada Life failed to preserve its right to reimbursement for the Social Security benefit Mayo was eventually awarded.

covers a prior period of months.[3]  However, neither circumstance is present here.  First, the Policy explains that Canada Life will trade its right to prospective reduction *via* estimating the amount of the potential future benefit for the right to retrospective reduction on the express conditions that the beneficiary, within six months of becoming disabled, 1) applies for the anticipated benefit, and 2) completes and signs Canada Life's Reimbursement Agreement, which "states that the person promises to repay to us any overpayment caused by an award of the benefit under the other source."  While Mayo eventually made a Social Security claim and fought hard and long to win it, he did not make the initial claim within the specified time period, and he never executed the Reimbursement Agreement.  Second, a retrospective reduction may also be used as a complement to prospective reduction.  The last sentence of the Reductions section requires a beneficiary who receives a retrospective Social Security award to repay Canada Life to the extent that Canada Life underestimated the amount actually received.  The plain language of the sentence premises this right to reimbursement for overpayments on Canada Life's having first

---

[3]In contrast, the Right of Recovery section clearly does not subject Canada Life's right to reimbursement to these limitations when the outside source of beneficiary income is a judgment or settlement based on a third-party's liability.

exercised its rights to make an **estimation** and, based on that estimation, to prospectively reduce the monthly benefit. In this case, Canada Life did not **estimate** the award that it apprized Mayo he was entitled to apply for, nor did it act to reduce his monthly benefit in anticipation of such an award.[4]

Canada Life argues that the court should not allow Mayo's refusal to sign the Reimbursement Agreement to result in a windfall in the form of a duplication of benefits for one disability at the expense of the Plan and other Plan participants. However, under the plain language of the Policy that Canada Life itself drafted, Mayo's refusal did not keep it from forestalling the benefit duplication it now urges the court to prevent. Upon Mayo's refusal, if not before, Canada Life, as long as it did so in accordance with relevant Policy language and applicable laws, could have both protected the Plan's rights and satisfied the Plan's obligations under the Policy by withholding a portion of Mayo's monthly payments based on the estimated amount of the Social Security benefit it felt

---

[4]To the extent that the general statement in the Reductions section that "payments will automatically be reduced by the amount of any income that a person earns or is entitled to apply for and receive [under Social Security]" conflicts with the more specific Policy language on which the court relies, the latter controls under the well-settled rule of contract construction that specific provisions govern general ones. Furthermore, any ambiguity created is construed against the drafter under the rule of *contra proferentem*. *See Lee*, 10 F.3d at 1550-1552.

he was entitled to.  It expressly maintained that right.  The mere fact that Mayo would probably be complaining if Canada Life had exercised that right does not alter the analysis.  Now the only way for the court to save Canada Life's right to obtain reimbursement for its overpayments to Mayo, as discussed above, would be to ignore the plain words of the Policy.  Given the strictures of *de novo* review, this the court cannot do.

Moreover, the result of this court's refusal to allow Canada Life to withhold from Mayo is not as clearly adverse to the long-term interests of the Plan and other Plan participants as Canada Life contends.  In the first place, the risk-taker here was Canada Life.  It is the insurer.  There is no proof that the premiums it charges the Plan will increase if the court decides against Canada Life.  Furthermore, under the Reductions section, estimating can serve the aggregate interests of Plan beneficiaries in two ways. First, by an actual exercise of its power of estimating, Canada Life conserves by presently paying out less money in the expectation of a third-party payment to the beneficiary. Canada Life appropriately points out that "[a] present reduction of benefits based upon an estimate of future social security benefits could be harder on participants, because they receive less money each month in the short term."   Def.'s Summ. J. Br. at 13.   However, under the

17

Policy, the bare prospect of this harshness arguably could serve the common good if it lowers premiums.  The Reductions section specifies that one of the conditions a beneficiary must satisfy in order to avert prospective reduction is initiation of the claim upon the outside source, in this case Social Security, within a certain period of time.  Consequently, by encouraging timely initiation of claims, and therefore their timely resolution, to the extent that those claims blossom into awards that may substitute for payments under the Policy, the mere likelihood of Canada Life's use of prospective reduction also conserves Plan funds by keeping premiums in check.  If this court were to allow Canada Life the right of reimbursement for overpayments without regard to whether Canada Life exercised its power under the Policy to spur beneficiaries into utilizing substitute sources of disability income (thereby limiting the size of those overpayments), the court might be diminishing Canada Life's incentive to exercise that power, resulting in less efficient use of the Plan's contributions in the form of premiums. While a ruling for Canada Life would prevent Canada Life's discrete loss of $19,150.02 in this case, such a ruling would not necessarily be in the long-term interests of the Plan.

### Other Issues

1.  <u>Purity and the Plan</u>

As indicated in the introductory paragraphs of this opinion, Canada Life is the only defendant which has filed a summary judgment motion.  Although represented by the same counsel, Purity and the Plan have neither filed their own motions for summary judgment nor joined in the motion of their co-defendant.  Mayo, on the other hand, does not limit the scope of his motion for summary judgment. His brief in support of his motion impliedly incorporates the allegation in his original complaint that Canada Life acted as the agent of the Plan and of Purity, as the provider of the Plan to its employees.  Although the court takes Mayo's motion as seeking judgment as a matter of law against Purity and the Plan as well as against Canada Life, the liability, if any, to Mayo is that of Canada Life and not of Purity or the Plan.


2.  <u>Mayo's motion to reinstate his state law claims against Canada Life</u>

Upon reconsideration, the court will not further delay a decision on Mayo's pending motion to reinstate his state law claims, because to do so would be to put off the inevitable.  Postponing a ruling on Mayo's motion to reinstate was based on the possibility that this court is correct in *Hill*, 117 F.Supp.2d 1209.  *Hill*'s

holding in regards to the "saving" of a bad faith claim applies only to bad faith claims brought against insurance companies, because there is no tort in Alabama of bad faith refusal to pay by a non-insurance company like Purity or the Plan. *See id.*

As to Mayo's proposed bad faith claim against Canada Life, which is an insurance company, the court reasoned in its order of November 21, 2000 that if the Eleventh Circuit should agree with this court's holding in *Hill*, Mayo's bad faith claim under Alabama law against Canada Life, as the insurer, would be "saved" from ERISA preemption.   However, under state law, the existence of a legitimately debatable reason for the insurer's challenged decision regarding benefits sought under the policy defeats a claim that the decision was made in bad faith.   *See Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So.2d 1357, 1361-1362 (Ala. 1982) (and cases cited therein).   In the present case, the language contained in the Reductions section provided an arguable basis for Canada Life to think that it could require reimbursement and to reduce benefits to recoup for income received from Social Security.   Furthermore, the recoupment of what is undeniably a mistakenly made overpayment arguably could serve the long-term, aggregate interests of the beneficiaries and of the Plan.   While this court has found, *supra*

20

in Part II of its discussion, that Canada Life violated the terms of the Policy by forcibly recouping its overpayment by suspending Mayo's monthly benefit, under the facts before it, the court also finds, as a matter of law, that a legitimately debatable basis existed for Canada Life's said decision.  *See Dutton*, 419 So.2d at 1362.  A decision can be erroneous and nevertheless not be arbitrary - even if made by a self-interested insurance company.  Therefore, Mayo's bad faith claim does not warrant reinstatement even if there should be an appellate agreement with *Hill*.  Thus, the rationale for postponing a decision on Mayo's pending motion to reinstate his bad faith claim no longer exists, so Mayo's motion to reinstate a state law claim of bad faith will be denied.

### CONCLUSION

A separate and appropriate order will be entered.

DONE this 22nd day of March, 2001.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

21